ORIGINAL

# In the United States Court of Federal Claims

No. 16-1613
Filed: March 9, 2017

FILED
MAR - 9 2017
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * *
ANDRE EVERTON GRANT            *
                               *
              Plaintiff,       *
                               *
v.                             *
                               *
UNITED STATES,                 *
                               *
              Defendant.       *
* * * * * * * * * * * * * * * *
```

**Andre Everton Grant**, pro se.

**Peter A. Gwynee**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him was **Chad A. Readler**, Acting Assistant Attorney General, Civil Division, and **Claudia Burke**, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.

## OPINION

**HORN, J.**

### FINDINGS OF FACT

On December 5, 2016 pro se plaintiff Andre Everton Grant filed a complaint in this court titled "COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT." Plaintiff's complaint alleges that the United States, acting through the United States Customs and Immigrations Service (USCIS) and the United States Immigration and Customs Enforcement (ICE), acted negligently and violated his rights under the Fourth Amendment to the United States Constitution when the United States government denied his claim of "derivative citizenship" and attempted to deport him after he was imprisoned in 2010. Plaintiff claims "$10,040,029" in damages, costs, and although appearing pro se, requests attorney's fees.

Mr. Grant was born in Jamaica to Jamaican parents in 1985. On October 18, 2010, he was sentenced to 48 months imprisonment by the United States District Court for the District of Maryland and, after ICE subsequently lodged an immigration detainer against him, he was transferred to the Moshannon Valley Correctional Center (MVCC). Mr. Grant

7014 1200 0000 9093 6804

alleges that, immediately after he arrived at MVCC, he informed ICE that he was a United States citizen. Mr. Grant alleges that, at the request of ICE, he filed an application for a Certificate of Citizenship with USCIS, which was denied on June 13, 2011. Mr. Grant, however, alleges that he did not receive a copy of the denial letter from USCIS, as it was returned to sender. According to Mr. Grant, after he eventually learned this through a Freedom of Information Act request, he filed a new application with USCIS, arguing that its negligence prevented him from receiving a denial letter and deprived him of his right to appeal the denial of his previous application.

According to his complaint, ICE initiated removal proceedings against Mr. Grant in May 2012 and on July 17, 2012, he had his first hearing before an immigration judge. According to Mr. Grant, at this hearing the immigration judge stated that he believed Mr. Grant may be a citizen and, at a subsequent hearing in October 2012, the immigration judge instructed Mr. Grant's attorney to submit a brief explaining how Mr. Grant had acquired his citizenship. On December 14, 2012, ICE removed the immigration detainer that had been placed on Mr. Grant. Mr. Grant then sought a transfer out of MVCC and to a community confinement center through the United States Bureau of Prisons administrative appeals process, but this request was denied on the grounds that there was still a chance that Mr. Grant could be deported. Mr. Grant alleges that while he was in custody, on July 4, 2013, his son died in Jamaica "with a sickness that would be considered curable if he was in the United States." On December 6, 2013, ICE lodged a new detainer on Mr. Grant, which it cancelled on December 12, 2013.

According to plaintiff's complaint, on the day after the new detainer was cancelled, December 13, 2013, Mr. Grant was released from MVCC. In February 2014, however, ICE again initiated removal proceedings against Mr. Grant, which were postponed pending his appeal of the denial of his application for a Certificate of Citizenship with USCIS. In an order dated March 25, 2014, which plaintiff has attached as an exhibit to his complaint, the USCIS Board of Immigration Appeals ruled in favor of Mr. Grant, concluding that he had acquired United States citizenship, effective February 27, 2001, as a result of the passage of the Child Citizenship Act of 2000, Publ. L. No. 106-395, 114 Stat. 1631 (2000). Mr. Grant received his Certificate of Citizenship on April 16, 2014, a copy of which he also attaches to his complaint. Mr. Grant states that he filed a claim for compensation with USCIS on June 5, 2014, but has heard no answer since.

Based on these circumstances, Mr. Grant alleges a number of causes of action against USCIS and ICE. With regards to USCIS, Mr. Grant alleges that it acted negligently when it denied his citizenship after, allegedly, failing to properly interpret relevant case law and statutes, when it allegedly failed to pay for the postage on his June 13, 2011 denial later. Mr. Grant also alleges that USCIS's actions resulted in the wrongful death of his son in Jamaica. Finally, Mr. Grant alleges that USCIS's actions violated his "right to liberty" under the Fourth Amendment to the United States Constitution and his "rights as a United States Citizen to seek gainful employment and or [sic] go to school." With regards to ICE, Mr. Grant alleges that it acted negligently in failing to "fully investigate all claims of Citizenship" and that its "placing and cancelling of numerous immigration detainers" on him constituted negligent infliction of emotional distress. Mr. Grant seeks $10,040,029.00 in damages, $10,000,000.00 for the emotional distress resulting from the alleged denial

of his rights and the death of his son and $40,029.00 for the costs of defending against his deportation. Mr. Grant also requests that the court "take a look at the constitutionality of the Board of Immigration Appeals [BIA] policy as it pertains to precedence and Non-precedent [sic] decisions, and issue an injunction for the BIA to make [his] case A [sic] precedential decision." Finally, Mr. Grant seeks costs and, although filing pro se, also seeks attorney's fees.

On February 2, 2017, defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). In its motion, defendant argues that the court lacks jurisdiction to hear plaintiffs' complaint because his allegations sound "exclusively" in tort and that this court lacks jurisdiction to hear tort claims. Mr. Grant failed to file a timely opposition to defendant's motion to dismiss. This failure, however, does not impact the court's analysis because the result in the case is clear based on the established jurisdictional principles applicable to this court, which dictate that the court is without jurisdiction to hear the allegations raised by plaintiff.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed.

3

Cl. at 253)). Even given the rules which apply to pro se plaintiffs, plaintiff's complaint currently before the court, although attempting to cite to a range of statutes and case law, does not allege cause of action justiciable in this court.

Defendant, in a very summary, cut-and-paste motion has moved to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. Nonetheless, the defendant is correct about the failure of plaintiff to raise issues within this court's jurisdiction. The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in

4

> which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805

5

F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Most of the causes of action alleged in Mr. Grant's complaint, if legally cognizable at all, given the facts alleged, sound in tort, including negligence, negligent infliction of emotional distress, and the wrongful death of his son in Jamaica. Indeed, Mr. Hood titled his complaint "COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT." It is clear that this court does not have jurisdiction to hear tort claims against the United States. See 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims today."); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims is a court of limited jurisdiction. It lacks jurisdiction over tort actions against the United States."); Kant v. United States, 123 Fed. Cl. 614, 616 (2015). Indeed, the jurisdictional provision identified in plaintiff's complaint, the Federal Tort Claims Act, 28 U.S.C. § 1346, makes tort claims against the United States the exclusive purview of the United States District Courts. See 28 U.S.C. § 1346(b)(1); see also Brown v. United States, 74 Fed. Cl. 546, 549 (2006) ("[T]he FTCA [Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)] grants exclusive jurisdiction to the United States federal district courts regarding tort claims against the United States Government.").

Plaintiff also alleges that the actions of USCIS violated his rights under the Fourth Amendment to the United States Constitution. This court also has no jurisdiction over any claim based on the Fourth Amendment. See LaChance v. United States, 15 Cl. Ct. 127, 130 (1988) ("[T]he fourth amendment does not mandate the payment of money by the United States." (citing Shaw v. United States, 8 Cl. Ct. 796, 800 (1985))); Roberson v. United States, 115 Fed. Cl. 234, 240 ("The Fourth Amendment is not money-mandating." (citing Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997))), appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Haka v. United States, 107 Fed. Cl. 111, 113-14 (2012); Kam-Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) ("[T]his Court does not have jurisdiction to hear claims contesting the lawfulness of a search and seizure because due process and Fourth Amendment claims are reserved to the District Court." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995))), aff'd, 682 F.3d 1364 (Fed. Cir. 2012).

Finally, plaintiff alleges that USCIS "violated [his] rights as a United States citizen to seek gainful employment and or go to school." For this claim, plaintiff cites to insufficient facts to support his allegation and to no regulation, statute, or constitutional provision that can be interpreted as mandating he can claim the payment of money for an alleged violation by the government of these alleged "rights." The court, thus, lacks jurisdiction to hear defendant's claims based on these allegations.

The court notes that, along with his complaint, plaintiff has filed an Application to Proceed In Forma Pauperis. In order to provide access to this court to those who cannot pay the filing fees mandated by RCFC 77.1(c), 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[1] possesses [and] that the person is unable to pay

---

[1] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding in forma pauperis applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed in forma pauperis in federal court. See, e.g., Floyd v. United States Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); Schagene v. United States, 37 Fed. Cl. 661, 663 (1997), appeal dismissed, 152 F.3d 947 (Fed. Cir. 1998); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Smith v. United States, 113 Fed. Cl. 241, 243 (2013); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and

7

such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. See id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217–18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what

---

"prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

> may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original).

In Fiebelkorn v. United States, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also Fuentes v. United States, 100 Fed. Cl. at 92; Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In his Application to Proceed In Forma Pauperis, plaintiff states that he is presently employed with a gross income of $42,000.00 a year and a net income of $31,000.00 a year and that he financially supports a son and his mother. The court notes that plaintiff's salary, although modest, is significantly above the established federal poverty line for a family of either three or four, as defined by the United States Department of Health and Human Services' Poverty Guidelines. See Annual Update of the HHS Poverty Guidelines, 82 Fed. Reg. 8831-03, 8832 (Jan. 31, 2017) (listing the poverty line as $20,420.00 for a family of three and $24,600.00 for a family of four). Review of prior decisions in this court demonstrates that those granted in forma pauperis status generally have an income much closer to the poverty line than plaintiff's. See, e.g., Fuentes v. United States, 100 Fed. Cl. at 92 (finding that plaintiff's income of less than $24,000.00 was "not significantly above poverty level" listed by federal guidelines as $14,710 for a family of two); Fiebelkorn v. United States, 77 Fed. Cl. at 62 (finding that plaintiff's income was "only $823 above the 2007 Department of Health and Human Services Poverty Guidelines for three-person families"). The court, thus, is skeptical that plaintiff is eligible to receive in forma pauperis status. The court need not, however, make this determination because, as discussed above, the court has determined that it lacks jurisdiction to adjudicate the claims alleged in plaintiff's complaint. Plaintiff's motion for leave to proceed in forma pauperis, therefore, is denied as moot.

## CONCLUSION

Because the court lacks jurisdiction to adjudicate any of the alleged causes of action included in plaintiff's complaint, defendant's motion to dismiss is **GRANTED**.

Plaintiff's complaint is **DISMISSED**. Plaintiff's Application to Proceed In Forma Pauperis is denied as **MOOT**. The clerk shall enter **JUDGMENT** consistent with this opinion.

IT IS SO ORDERED.

*[signature]*

MARIAN BLANK HORN
Judge